Our next case for argument this morning is Arias v. Garland. Take your time. Not at all. Take your time. All right. Miss, is it June? Tun. Tun. Good morning, Your Honors. May it please the Court. My name is June Tun, and I represent the appellant, Ms. Karla Granados Arias, in her petition for review before this Court. The issue presented to this Court is whether the agency, the Board of Immigration Review, has honored the responsibility of review to which it has been entrusted to do so in reviewing Ms. Granados Arias' appeal of the immigration judge's decision denying her applications for asylum, withholding of removal, and protection under CAP. The answer is no. The record reflects that the Board neglected its duty of administrative review and ignored both Ms. Granados Arias' arguments and the evidence that was presented. Both this Court and the U.S. Supreme Court have sharply criticized the Board's negligence in executing its duty of administrative review. This circuit has a long-standing history of vacating BIA decisions where the agency has failed in its duty of administrative review by neglecting to examine the record and provide a reasoned explanation. Most recently, in Sanchez v. Sessions, the Court held where the Board concluded, but without explanation, that none of the evidence would have likely altered the outcome of this case with regard to the hardship that would prove to its children. If I could interrupt right on that point at the outset here, this is hardly an unexplained set of decisions from the Board of Immigration Appeals and the immigration judge. These are robust explanations, and I know you take issue with some of the conclusions that the agency reached in both of these decisions and with some of the treatment of the record that the BIA and the IJ gave to the case, but it's not a case where there was a failure of explanation. There's a robust explanation in both decisions, so we can kind of skip to the next point. And the difficulty I'm having with your argument is that while you're quarreling with the agency's treatment of different sort of baskets of evidence here, you never really engage with the linchpin of the decision, which is that there's no nexus here to a protected class or protected group. So the protected groups that were articulated were four. And specifically, two of the actual social groups that were proposed were not addressed in the immigration judge's decision, nor was it addressed in the BIA's decision. And that's where the judge then states that we don't get to the nexus, but I feel that the two social groups that were not explained in the decisions were that, exactly, and that women business owners in El Salvador who do not abide by the extortion efforts of the gangs and women in general in El Salvador connect to the nexus of what she has suffered. The past persecution is that she- John, forgive me, but what evidence was presented that the extortion was motivated by their status as business owners or women rather than perceived wealth? Is there any indication that if they were wealthy through some other means that the gangs would not target them? Yes, Your Honor. The evidence itself was her testimony. And in her testimony, she stated that they received this note specifically requiring that the payment be made through a map of where the payment should be made, but also included that they should leave an intimate piece of undergarment. And I think that's what distinguishes it. It's not just the perceived wealth, but they have targeted women business owners. Had the note just mentioned leave a certain sum of money at this location, it would be perceived wealth. But he took it a step further and requested that an intimate article of undergarment be left in addition to this money. In addition, the expert opinions also demonstrate that not only is there extortion by the gangs to all business owners, but women in general have been a marginalized group that has been historically throughout the culture of El Salvador. And this is where the board has failed to consider all the material and relevant evidence. This is in the regulations that it must consider all the relevant evidence. And I think that is the main crux of the argument is that they have decided to ignore two of the proposed social groups and stated that they're not going to get to that because there is no nexus to the past persecution that she suffered. But the evidence does show that this is not just a regular case of extortion. The individual targeted Ms. Granados Arias and her sister because they were women, women business owners in El Salvador. And this is the main issue that I see here is that although there was an opinion, they did not consider the evidence that was material to the argument that was made. We have to go ahead and see that economic deprivation does rise to the level of persecutory harm. And in this case, she had to shutter her business after several months of successful business with her and her sister due to this threat that she received. And this threat is what caused her to stop her business and leave the United States. The government points to the fact that, well, there's no future harm because her sister is living a wonderful life now in El Salvador. But this is not the point. She has now have led a fugitive life. She doesn't work anymore, and she's unable to provide for herself. This goes to the evidence that was submitted that women in El Salvador are a marginalized group. They have been abused repeatedly by their spouses. The government now has also perpetuated this abuse by not providing any protection to women and specifically women business owners in El Salvador. And had the immigration judge or the Board of Immigration Review provided some type of explanation or well-reasoned determination that this actually wasn't the point here in Ms. Granados Arias' case, then the decision would have been a reasoned decision. But with a blanket dismissal of the particular social groups and not addressing the hundreds of pages that were submitted, but specifically the articles that were submitted for these proposed social groups, there was a violation of due process in Ms. Granados Arias' matter. Here, as I stated, Ms. Granados Arias suffered the loss of her business when she had to close it because she knew that she would not be able to continue meeting the gang's extortion demands. And she feared retribution for her not continuing to contribute to the gang's coffers. She also stated in the evidence that she had a friend who was also a female business owner that defied the gang's request, did not pay the amount of money, and instead reported this incident to the authorities. Because of her report to the authorities, a couple weeks later her son was killed. This woman was her friend. Karina also fled, and it's unknown where she's fled to, but this is a parallel example that Ms. Granados Arias could have had the same fate had she continued to keep her business or had she went ahead and reported this to the authorities. And that's why I think that women business owners is a particular social group and that there is a nexus with what she had suffered. She had to close this business because of this threat that she received. And the threat that she received is different from just a generalized threat. But even if Ms. Granados Arias has not experienced past persecution, the record evidence also establishes that Ms. Granados Arias had a well-founded risk of future persecution because of the observed prevalence of Salvadoran gang retaliation against those that have perceived to have defied them. There were several articles that described the harm to business owners if or when they failed to comply with extortion demands. There were several articles that stated that persons who had resisted the authority of the local gang or even just had inadvertently crossed it are reportedly subject to swift and brutal retaliation from the gang. As low as a 10% chance of being shot, tortured, or otherwise persecuted is sufficient for establishing a well-founded fear of future persecution. While these articles were presented, none of these articles were discussed either by the immigration judge or the BIA in its decisions. Moreover, in finding the absence of an objective risk of future persecution, the immigration judge incorrectly relies on the lack of harm to Ms. Granados Arias' sister and mother who remain in El Salvador. However, her family members in El Salvador live a fugitive life. She testified... Did you want to reserve some of your time for rebuttal? Yes, Your Honor. I lost track of time. Thank you. Thank you. Mr. Fulton. Good morning, Your Honors, and may it please the Court. Today I plan to discuss three independently dispositive reasons that this Court should deny the petition for review. First, Ms. Granados failed to challenge the agency's dispositive nexus finding that the extortionist here was motivated by her perceived wealth. Second and third, the record does not compel a finding of the requisite nexus or an objectively reasonable future fear. I'd also like to explain briefly the adequacy of the Board's decision if the Court is interested. Now first, as to waiver, Petitioner waived the nexus issue in her opening brief. Although she makes a conclusory assertion at one point that she did establish nexus, she doesn't advance an argument that the gang was motivated by anything but her perceived wealth. As I'll discuss shortly, the first element of this nexus requirement is a basic motive showing, as Your Honors have explained. Now our brief pointed out the lack of... the gangs to target them as a matter of course because they believe they can take a cut of the profits. Isn't that, or would that be an action based on their membership in that group? Why should that be disregarded merely by saying it is based on their perceived wealth, in your view? Well, Judge Rovner, what this nexus question asks is what motivated the harm, as you note. So under this Court's precedent and Board case law, what that question really means is, as this Court noted in Melnick, was there animus against this proposed group, or was it simply a means to an end? So to the extent that the gang used or looked at small business ownership as a mean to an end to obtain money, that does not meet the nexus requirement. I think we can also look at this Court's decision in Oriana Arias, where as the agency relied on this case that the gang's motive was to fill its coffers with money, and that did not meet the nexus requirement. Put another way, but for the small business ownership, the gang still would have targeted Ms. Granados Arias because they perceived she had money. If the money, for example, came from another source, the gang did not care about the fact that she was a small business owner. It cared about the fact that she had money. Before explaining nexus in greater depth, I would like to briefly mention, as Chief Judge Sykes noted, nexus was a dispositive finding here. But that is a different question, and I think Petitioner is kind of conflating these two issues. First, is a particular social group a legally cognizable basis for an individual to apply for asylum? That is a separate and antecedent issue to the nexus question. And so because, as the Board said, it found nexus as a dispositive reason here, it did not need to address the cognizability question. So that's why the Board didn't go into details as to whether it found these particular social groups viable. And I do think Petitioner is conflating these efforts, and that's why she, for instance, waived these issues in her opening brief because she relies too heavily on whether these groups are cognizable. As to nexus here, we know that the immigration judge was focused on the motive as perceived wealth because the agency specifically said so. In AR-6, the agency said the gang was motivated by, quote, her perceived wealth so that the gang could raise money for its criminal ventures. In so finding, the immigration judge reasonably emphasized the $50 sum that was demanded by the threatening note. That's at AR-89 where the IJ makes that finding. The immigration judge also relies on the fact that this risk of extortion is shared by other wealthy Salvadorians. That finding is also at AR-89. And this factor, I'd like to note, emphasizes the way that the agency did consider the country conditions evidence because it's looking at not only what happened in this specific case, but it's considering the evidence that small business owners are targeted or are extorted in a large group, rather. I think the country conditions evidence, one of the pieces that Ms. Granado says the agency overlooked, is an article, for instance, that says a large percentage of these groups, of these individuals, small business owners, are extorted. So this really goes back to the point of what was motivating the gang. And the fact that they are targeting small business owners to get money from, that's simply a means to an end for its efforts to get money. This case is very similar to what the court found in Melnick where it said that there was no animus towards small business owners. Again, this is somewhat similar to a means to an end analysis, that that means is not sufficient to show that its motive was actually money. Put a slightly different way, there's no intent to overcome the characteristic of small business ownership. All the gangs are trying to do is get money. That's exactly what this court said in Melnick. There's no nexus because, quote, the small business owners simply have money that the criminals want. Essentially, these individuals were a convenient target. I'd also like to briefly note the fact in Petitioner's opening statement here today, she noted the fact that the note here mentioned an intimate undergarment. I'd like to first note that Petitioner did not mention this piece of evidence in her closing statement in Immigration Court. She did not raise the motive issue on appeal to the board. So she essentially abandoned this piece of evidence, and that's why, that's one reason the agency's focus was so much on her perceived wealth because that's what her theory was throughout this course of the proceedings. But even if we are to look at that aspect of the note, the record does not compel a finding that gender was a motive in this case at all. And we can look at a couple pieces of evidence on that point. The first is the note that Petitioner also mentioned to her friend Karina. Right around the same time that Petitioner and her sister received a threatening note, her friend Karina also received a note demanding a $50 sum. That note, there's no indication of any evidence that that note mentioned intimate undergarments or anything about gender, even though Karina was a female small business owner. What she had was money. That's what the gang really wanted. We can, again, look to the fact that the IJ emphasized that the country conditions evidence shows that small business owners are extorted en masse. That also shows that gender is not what the gang cared about. It simply wanted money. So I'd like to, with my brief time remaining, I don't want to belabor this point because, as Chief Judge Sykes noted, the agency decisions here are robust and detailed. But just a couple quick points. The board itself does discuss country conditions evidence at AR-7. And at AR-8, it devotes one of its last paragraphs to confirming that the immigration judge analyzed the documentary evidence in this case. That's at AR-8. If we look at the IJ's decision itself, the immigration judge at AR-84 says it's considering the following evidence in its decision. And then it cited exhibits, including country conditions exhibits. The immigration judge in its decision also explicitly cites Exhibits 6 and 7, which are expert reports and country conditions articles. That's at AR-91. And, again, the immigration judge's nexus analysis specifically discusses that this extortion risk was shared by other Salvadorians perceived as wealthy. That also reflects an analysis of country conditions evidence. Of course, there's no need for the agency to cite specific individual news articles in its decision, particularly whereas here the applicant submitted well over 100 pages worth of documents of country conditions evidence. And she did not, in those documents, highlight specific pieces that it was relying on, which is what the immigration court practice manual requires. Now, briefly, Your Honors, I'd like to explain this last factor. The record does not compel a finding that there was an objectively reasonable fear. Again, this is an alternately dispositive basis on which this court could deny the petition for review. So even if this court were to overlook petitioner's waiver of nexus, and even if it were to disagree as to the no nexus finding here, it can and should still affirm or deny the petition for review for lack of an objectively reasonable fear. So in this case, a record does not compel a finding of this fear. There was only one threat back in 2014, and neither sister who opened this tortilla business has been threatened once again. What's significant here is that these sisters are similarly situated. So while the petitioner fled to the United States, her sister remained in El Salvador and only moved a few houses down. And the fact that she chose not to work does not in and of itself establish that she is a fugitive. The board explicitly considered and rejected that requirement or that argument. I see that my time has expired, Your Honors. So unless there are any other questions, I'd like to rest on our brief for any remaining issues and ask that this court deny the petition for review. Thank you very much. Ms. Tung, you had 18 seconds left. I'll give you an extra minute to give us some rebuttal. Thank you, Your Honor. Just really quickly, I'd like to distinguish, as opposing counsel stated, that Melnyk does not fall in line with Ms. Granados-Arias. In Melnyk, it was a husband and wife who were from Ukraine that also had a business and were extorted from their business. In this case, they specifically targeted Ms. Granados-Arias because she is a woman, a woman business owner. That's why this case does not fall in line with Melnyk. It's clear that the immigration judge cited to the country reports, but she did not provide any meaningful explanation and only stated that these generalized economic disadvantages and conditions facing the entire population is not persecution, without discussing any facts that were related to her actual case. Ms. Granados-Arias' economic hardship is unique to her in the fact that she was a business owner that was female. The generalized country reports that she reports to discusses not only the harm that women face in El Salvador, but also business owners. And for this reason, we request that this court remand the decision and to give Ms. Granados-Arias an opportunity to have her case be meaningfully discussed and reasoned. Thank you, Your Honor. Thank you. Our thanks to both counsel. The case is taken under advisory.